304

BELT RAILWAY COMPANY OF CHICAGO, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4289.   Promulgated November 25, 1927.

*R. Kemp Slaughter, Esq.,* and *Hugh C. Bickford, Esq.,* for the
petitioner.

*A. R. Marrs, Esq.,* for the respondent.

OPINION.

MARQUETTE: The deficiency letter herein asserts additional taxes for the years 1913 to 1919, inclusive, and the petitioner appealed as to all of those years.  However, at the hearing counsel for the petitioner conceded that the Board had no jurisdiction as to the years

1913, 1914, and 1915, and abandoned the appeal in so far as it relates thereto.

The first question presented by the record is whether or not the petitioner, in computing its net income for the years 1916 to 1919, inclusive, is entitled to any deduction for depreciation of the rolling stock and equipment which was held under the lease set forth in the findings of fact. The Revenue Acts of 1916 and 1918 each provide that in computing its net income a corporation is entitled to deduct a reasonable amount for the exhaustion, wear and tear of its property, and the petitioner rests its contention as to this issue on these provisions of the statutes.

The record discloses that the petitioner had no invested capital in the property for which the depreciation was taken and the depreciation reserve established. This reserve then, can not be a fund set aside for keeping intact invested capital; it can only be regarded as a fund accumulated from year to year to meet a contingent liability. This contingency—the wearing out and consequent need of replacement of locomotives and cars leased to and used by petitioner—probably would become an actuality before the termination of the lease. If and when such replacements became necessary, petitioner was obligated by its contract to supply them at its own expense. But until such expenditures become necessary and are actually made by the petitioner, it can not deduct the amounts thereof from its gross income. It can not anticipate a probable expense as to leased property, and in which it has no capital investment, in computing its income tax.

The Board early decided that a taxpayer operating under a lease, who had no capital investment in the chattels under lease, had no basis for an allowance for wear, tear and exhaustion. *Appeal of William J. Ostheimer*, 1 B. T. A. 18. In that case, just as in the case before us, the lease expressly bound the lessee taxpayer to maintain the chattels, supplies and equipment under the lease "in as good condition as they now are and in such condition to * * *" redeliver them to the lessor at the end of the term. It was apparent in that case, as in this, that the chattels under lease could not be maintained and returned to the lessor in like good condition, except by renewals and replacements. In that case, as in this, the taxpayer's books were kept on the accrual basis. The Board said:

In order that an item may be accrued, however, a liability must actually be incurred in the taxable year. *Schuster & Co.* v. *Williams*, 283 Fed. 115. The statute recognized the accrual basis of making returns by providing for the deduction of expenses *incurred* but not paid. It is apparent that no liability *in praesenti* was incurred under the terms of the lease in question in the years 1918 and 1919 however well known it might have been that a liability in some amount would be incurred at some time in the future. The liability to restore chattels as good as new or as good as when received when a lease is ultimately

canceled or surrendered at some indefinite or indeterminate time in the future is not a present actual liability, and is not the actual incurring of an expense or liability.

*     *     *     *     *     *     *

In the case of a lessee of chattels who is required by the terms of the lease to make such renewals or replacements as are necessary to keep the property in as good condition as when received as additional rental or as a condition to the continued use of the property to which he has no title and is acquiring none, they are deductible, if at all, as expenses paid or incurred in carrying on a trade or business. Reserves for future unincurred expenses are not allowable as deductions under the Revenue Act of 1918.

The same conclusion applies under the Revenue Act of 1916. See also *Weiner* v. *Weiss*, 17 Fed. (2d) 650; 6 Am. Fed. Tax Rep. 6527, to the same effect.

These decisions are directly in point with the case we are now considering. The petitioner had no cost or capital investment in connection with the leased rolling stock. Whatever liability it may have had with respect to such chattels, it was a future, not a present liability. The petitioner's original capital would have remained unimpaired even though this depreciation reserve had not been established. We therefore sustain the Commissioner in his disallowance of the depreciation reserve as a deduction from gross income in the years 1916 and 1917. The record shows, however, that the petitioner did not take any deductions for depreciation of the leased equipment in computing its net income for 1918 and 1919 and the respondent, therefore, erred in adding to its income as reported, any amount as disallowed depreciation of that equipment for those years.

The only other assignment of error is that the respondent added to the petitioner's income for 1917, 1918, and 1919, inclusive, erroneous amounts as "income tax accrued" in those years. The record as to what actually occurred in this respect is not as clear as might be desired; in fact, it is difficult to tell what the true situation is. However, it appears that the petitioner in the year 1917 estimated the tax that would be due and payable in that year on its return for 1916, accrued such estimated amount on its books and collected it from the tenant companies. In reporting its income for 1917 the petitioner included therein either the amount estimated and accrued for 1916 taxes, or the amount thereof actually paid in 1917. The 1917 and 1918 taxes were handled in a similar manner; that is, they were estimated, accrued and collected, and either the estimated amount, or the actual amount paid, included in income for 1918 and 1919. The respondent has added to income for 1917, 1918, and 1919, the amounts set forth in the findings of fact which, it is conceded, resulted, to some extent at least, in a duplication of income. We have heretofore held in *Providence & Worcester Railroad Co.*, 5 B. T. A. 1186, that income and profits taxes of the lessor, paid by the lessee, constituted income

in the year in which paid, in the nature of additional rental. Therefore, the petitioner's income tax for each of the years 1916, 1917, and 1918 was a proper accrual in the subsequent year, and since it passed its taxes on to the tenant companies—that is, they reimbursed the petitioner in each year for the taxes on the preceding year's income, there should be included in income for 1917, 1918, and 1919, respectively, the exact amount of taxes due in each of those years on the income for the preceding year.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

MORRIS and GREEN did not participate.

STERNHAGEN concurs in the result.

TRUSSELL dissents.